## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**MANDY GRIFFIN**                                                                                 **PLAINTIFF**

**v.**                                    **CASE NO. 4:07CV1212 BSM**

**JIMMIE WEBB, et al.**                                                                         **DEFENDANTS**

### ORDER

Defendants have moved for summary judgment (Doc. No. 21), plaintiff has responded (Doc. No. 29), and defendants have replied (Doc. No. 35).  For the reasons set forth below, summary judgment is granted in part and denied in part.  Summary judgment is granted as to the following claims, and they are hereby dismissed with prejudice: (1) the Title VII claims against defendant Jimmie Webb in her individual capacity; (2) the Title VII claims against defendant John Selig in his official capacity; (3) the 42 U.S.C. § 1983 claims against the Arkansas Department of Human Services; (4) the 42 U.S.C. § 1983 claims against the Arkansas Health Center; and (5) the Arkansas Civil Rights Act claims against Jimmie Webb. Defendants' motion for summary judgment is denied as to the following claims, which are the issues that will be tried: (1) the Title VII claims against the Arkansas Department of Human Services; (2) the Title VII claims against the Arkansas Health Center; (3) the 42 U.S.C. § 1983 claims against Jimmie Webb in her individual capacity; (4) the 42 U.S.C. § 1983 claims against John Selig in his official capacity; and (5) the Family and Medical Leave Act interference and retaliation claims.

## I.  FACTUAL BACKGROUND

The following facts are undisputed unless stated otherwise.  Mandy Griffin (Griffin) began working as a Licensed Practical Nurse I (LPN) at Arkansas Health Center (AHC) in Benton, Arkansas on May 22, 2006.  AHC is a division of the Behavior Health Services of the Arkansas Department of Human Services (DHS) and is a skilled nursing facility that serves the needs of the elderly and persons with disabilities.  As an LPN, Griffin administered direct and indirect nursing care, including dispensing medications per facility policies and procedures, demonstrating competency in ordering and receiving medications through the pharmacy provider, and promptly reporting medication incidents to the charge nurse and completing appropriate documentation.

Griffin came to the AHC by way of a voluntary demotion and transfer from the Conway Human Development Center, another state-managed facility, where she had worked as an LPN II.  Upon her transfer to AHC, Griffin attended a new employee orientation, where she admittedly received AHC/DHS policies and procedures and notice of the Family and Medical Leave Act (FMLA) eligibility requirements.

Griffin was pregnant at the time of her transfer, and she told co-workers at AHC about her pregnancy before she began showing.  Griffin's immediate LPN supervisor at the Maple Unit of AHC, Carolyn Brunt (Brunt), asked Griffin when she would take leave and when she would return to work.  Griffin took time off for maternity leave around December 25, 2006. Her baby was born on January 2, 2007.

2

While Griffin was on maternity leave, the Maple Unit changed from twelve (12) hour shifts to eight (8) hour shifts.  Brunt called Griffin at home to inform her that twelve (12) hour shifts would no longer be available and that she would be required to work eight (8) hour shifts.  The defendants claim that Brunt gave Griffin a choice between the "11-7" or "3-11" shifts but Griffin contends that Brunt told her which shift she would work upon her return to AHC.  Plaintiff's response to statement of facts (Doc. No. 30) ("stmt. of facts"), ¶ 47.

Griffin also testified in her deposition that Brunt and Webb began calling her six weeks into her leave and "threatened her with termination if she missed a single day after that leave."  *Id.* at ¶ 49.  Griffin claims that she felt "harassed and threatened" and that the calls "induced her [to] end her leave earlier than she intended."  *Id.* at ¶¶ 24, 49.  She returned to work around February 25, 2007.

In her sworn statement, RN Supervisor Jimmie Webb (Webb) states that in early March 2007, she suspected that Griffin was violating AHC policy by ordering unnecessary medications for patients.  Ex. D, p. 2, defendant's motion for summary judgment ("def.'s motion").  AHC's Risk Management office immediately began investigating Griffin.  Webb, along with Risk Management, spoke to Griffin on March 7, 2007, regarding her medication orders for Residents A and B.  The order showed that Griffin had requested four (4) medications: Albuterol, Gauifesnesin DM Syrup, Hydroxyzine (Vistaril), and Promethanzine (Phenergan). The parties dispute whether Griffin ordered "unnecessary" medications and

whether there was a need to reorder them.  Stmt. of facts, ¶¶ 50, 55.  Griffin offered no explanation of why she ordered these medications other than "she just thought [the patients] needed more."  The parties agree that at the time Griffin offered this excuse, several other residents in Griffin's care needed more medicine and Griffin had neglected to place orders for them.  Defendants assert Griffin violated their Medication Administration policy by placing the order, and they viewed the order as unnecessary and as a misappropriation of funds.

Griffin also admitted to Webb that she gave a resident Atarax but did not immediately sign it out on their Medication Administration Record (MAR) because it was listed as Vistaril.  Griffin states in her deposition that Atarax and Vistaril are the "same thing as Benadryl."  Ex. A, plaintiff's response to defendant's motion for summary judgment ("pltf.'s resp.").  She admits that because it was listed under an alternate name, she did not know where to chart it initially.  Under AHC policy, medications are to be recorded on a MAR at the time the medication is given.  The person administering the medication is required to review the MAR to ensure that all of the necessary doses have been administered and that all administered doses were documented.  If a medication is documented after it was administered, nurses are required to note that it is a "late entry" with the date they gave the medication.  Webb states in her declaration that if a nurse is unsure about a medication they are administering, they are required to look it up immediately on "medication information sheets" located by the MARs. Ex. D, ¶ 39, def.'s motion.

Griffin admits that she was aware that it was against AHC policy and nursing standards to administer a medication without documentation. Both sides agree that even though she eventually documented the medication, she should have notified a supervisor immediately when she realized a medication had been administered without documentation.

Once Griffin admitted her mistake concerning the Atarax/Vistaril on March 8, 2007, she also admitted that she had entered eight nights of Vistaril doses on a patient's MAR, but later crossed out two when she remembered that she had not worked those nights. Although AHC policy required Griffin to note "late entry" on all of these entries, Webb states in her declaration that Griffin did not make notations until after Webb spoke with her about the missing medication. Ex. D, ¶ 47, def.'s motion.

Defendants maintain that Griffin's unnecessary medication order and her tardy and false MAR recording constituted violations of DHS's Minimum Conduct Standards. *See* Ex. S. def.'s motion. Fraud, dishonesty of any kind, falsification of information, committing misleading omissions, failure to perform assigned duties, and failure to comply with procedures are just some of the offenses considered as violations of the Standards. *Id.* DHS reserves the right under the Standards to discipline, and even terminate, any employee who violates the Standards or injures DHS, interferes with its efficient operations or ability to serve customers and the public, or damages its reputation. *Id.* at 5.

On March 12, 2007, Griffin was terminated and she received a Notice of Disciplinary Action effective March 10, 2007. Ex. Q, def.'s motion. The reason for her termination given

on the Notice was "employee falsified medication administration on a Resident 17's [MAR]." *Id.* Webb typed the Notice of Disciplinary Action and attempted to reach Griffin at home by telephone to discuss it. Webb never reached Griffin, and Griffin never came back to AHC to sign her Notice of Disciplinary Action.

Ed Hood, the AHC Director, made the ultimate decision to terminate Griffin. Webb did not have authority to terminate Griffin, although Griffin points out that her termination "never would have occurred" without "Webb going to Hood." Stmt. of facts, ¶ 90. Per AHC policy, Webb received a directive from Hood regarding the decision to terminate any employee who is under investigation. Webb, as the supervisor, is responsible under AHC policy to notify the employee of their termination.

Defendants present evidence of three disciplinary events involving Griffin before she took her maternity leave. First, on September 14, 2006, Griffin was counseled for failing to change a resident's Duragesic patch as scheduled. Ex. L, def.'s motion. She was counseled again on October 12, 2006, for insubordination, not accepting calls from Brunt, and for failing to notify her supervisor of her absence within one hour prior to the start of her shift as required by policy. Ex. M, def.'s motion. Finally, Griffin received a Notice of Disciplinary Action on November 23, 2006. AHC alleges that Griffin refused "to take her assignment on Willow Court and to take keys/responsibility to the Maple Court 7 am nurse." Ex. N, def.'s motion. Griffin claims that she refused the reassignment for good reason: to avoid working on an "infectious ward" when she was eight and one half months pregnant.

6

Stmt. Of facts, ¶ 42.

Griffin filed her complaint on December 21, 2007. She alleges in Count I that DHS Director John Selig (Selig), AHC, and DHS violated Title VII, the Pregnancy Discrimination Act (PDA), and 42 U.S.C. §1983 by discriminating against her based on her gender and pregnancy, and by retaliating against her for her Equal Employment Opportunity Commission (EEOC) charge by giving her a negative reference. She also alleges that Webb violated §1983 and the Arkansas Civil Rights Act by discriminating against her on the basis of her gender and pregnancy. Griffin further alleges in Count II that all defendants have violated the FMLA by failing to give her notice of her rights under the FMLA, interfering with her exercise of FMLA leave rights, and retaliating against her with a discharge and a negative reference.

Defendants now move for summary judgment on Griffin's Title VII, PDA, § 1983, ACRA, and FMLA claims. They assert that she was terminated for falsifying a resident's medication record and for giving a resident medication without appropriately documenting it.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8 th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*,

518 F.3d 552, 558 (8 th Cir. 2008)).

The moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985)).  Plaintiff as the non-movant "must demonstrate a genuine issue of material fact, that is a dispute that might affect the outcome of the suit under the governing law, so that a reasonable jury could return a verdict for the nonmoving party." *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (internal citation and quotation marks omitted).

In considering a motion for summary judgment, the court views the evidence and

draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  It does not weigh the evidence or make credibility determinations. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).  The plain language of Rule 56, however, mandates the entry of summary judgment against a non-moving party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## III.  DISCUSSION

A.    <u>Discrimination Claims</u>

Griffin claims gender and pregnancy discrimination by Selig, AHC, and DHS in violation of Title VII, 42 U.S.C. § 2000(e)-2(a)(1), its amendments contained in the 1978 Pregnancy Discrimination Act (PDA), 42 U.S.C. §§ 2000e(k), and 42 U.S.C. § 1983 by disciplining her and terminating her employment.  Griffin also claims Webb violated § 1983 and the ACRA by discriminating against her, disciplining her, and by giving her a retaliatory negative reference.  The defendants assert they terminated her because she violated their Minimum Conduct Standards and they deny giving her a negative reference.

Summary judgment is granted for the defendants on all claims barred by sovereign immunity, including the Title VII claims against Selig and Webb and the § 1983 claims against AHC and DHS.  Summary judgment is also granted to defendants on the ACRA claim that Griffin has ceded, and her retaliation claims under Title VII and § 1983.

Defendants' motion is denied as to Griffin's Title VII claims against AHC and DHS and her § 1983 claims against Selig in his official capacity and Webb in her individual capacity.

### 1. Immunity

a.      Title VII

The parties agree that the individual defendants, Selig and Webb, are not liable under Title VII. Indeed, the Eighth Circuit Court of Appeals has consistently held that "supervisors may not be held individually liable under Title VII." *Clegg v. Ark. Dep't of Corrs.*, 496 F.3d 922, 931 (8th Cir. 2007) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 821 n. 2 (8th Cir. 2000)). The Title VII claims against Selig and Webb are thus dismissed.

b.      42 U.S.C. § 1983

Although Griffin's § 1983 claims against AHC and DHS are dismissed, Griffin successfully argues that her claims against Selig and Webb should not be dismissed on immunity grounds. The Eleventh Amendment bars suit pursuant to § 1983 against agencies of the State of Arkansas, but state officials may be sued in their official capacities for prospective injunctive relief. *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007); (citing *Ex Parte Young*, 209 U.S. 123 (1908)). So, Griffin's claim for prospective injunctive relief from Selig in his official capacity may proceed.

Griffin's § 1983 claim against Webb in her individual capacity survives qualified immunity analysis. Although "government officials performing discretionary functions generally are shielded from liability for civil damages," that protection ends if their alleged

conduct violates "clearly established statutory or constitutional rights of which a reasonable person should have known." *Monroe*, 495 F.3d at 594 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The court must consider whether (I) Griffin has alleged the violation of a constitutional right by Webb and (ii) that right was clearly established at the time such that a reasonable person would have known that their conduct violated the law.  *Id.*  Griffin alleges that Webb violated her right to be free from discrimination based on her gender or pregnancy, a right that was clearly established at the time of Webb's alleged violation.  *See Lang v. Star Herald,* 107 F.3d 1308, 1311 n.2 (8th Cir. 1997) (explaining that Congress enacted the PDA to clarify that sex discrimination includes discrimination on the basis of pregnancy).  Thus, summary judgment is denied as to Griffin's § 1983 claim against Webb in her individual capacity.

      c.    ACRA

In response to defendants' motion for summary judgment, Griffin cedes her ACRA claims.  Therefore, Griffin's ACRA claim against Webb is dismissed.

### 2. *Merits of Title VII and § 1983 discrimination claims*

Griffin's remaining Title VII and § 1983 claims survive defendant's motion for summary judgment.  In that she offers no direct evidence of discrimination in support of her remaining Title VII and § 1983 claims, but offers indirect evidence, the court applies the *McDonnell Douglas* three-step burden-shifting analysis when evaluating Griffin's Title VII claims against AHC and DHS and when evaluating her § 1983 claims against Webb.  *See*

11

*McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *Clegg*, 496 F.3d at 926 (quoting

*Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005)).  The *McDonnell Douglas*

test requires the following.  First, Griffin "bears the burden of establishing a prima facia case

of discrimination."  *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).  "To

meet her burden, a plaintiff must show the following: (1) that she is a member of a protected

class; (2) that she was meeting her employer's legitimate job expectations; (3) that she

suffered an adverse employment action; and (4) that similarly situated employees outside the

protected class were treated differently."  *Id*.  Once Griffin meets this initial threshold, AHC

is required to rebut the new presumption that it "unlawfully discriminated against the

employee."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  The defendants then

bear the burden of production and must articulate some legitimate, nondiscriminatory reason

for the employment action.  *McDonnell Douglas*, 411 U.S. at 802.  If they successfully rebut

Griffin's prima facie case, the presumption of discrimination "drops from the case."  *Hicks*,

509 U.S. at 509.  Griffin could still succeed in the third step of the analysis, however, by

demonstrating that the stated reason for her discharge was pretextual or untrue.  *Id.* at 508*;*

*Ledergerber v. Strangler*, 122 F. 3d 1142, 1144 (8th Cir. 1997).

     The parties agree Griffin meets the first three prongs of her required prima facie case.

AHC contests, however, whether Griffin meets the fourth prong: that similarly situated

employees outside the protected class were treated differently.  Although the parties have

asked the court use different standards, namely the *Fields* standard versus the *Rodgers*

12

standard, the court declines to adopt either because Griffin meets both standards. This is true because, as discussed more fully below, Larry Elliott, one of the comparators offered by Griffin, is similarly situated in all respects to Griffin. Summary judgment is therefore inappropriate on this issue.

Griffin alleges that three of her colleagues suffered different discipline for similar conduct. Catina Davis, a Certified Nurse's Assistant (CNA) was given six disciplinary points and a three-day suspension for fighting with another staff member, threatening that staff member, and disrupting the unit. Ex. C, pltf.'s resp. Although this conduct is serious, and arguably worse than Griffin's, it is altogether different from Griffin's alleged conduct. Further, Davis was a new employee on probation, was employed in a different position, and her conduct did not threaten patient safety in the same manner that Griffin's alleged conduct did. Evidence of Davis' situation does not advance Griffin's prima facie case.

Griffin also asserts that Alice Balding, another CNA, received three disciplinary points and a written warning for falsifying information in a record, omitting information from a record, and making misleading statements. Ex. D, pltf.'s resp. Specifically, when a resident went missing in September 2005, Balding stated that she did not know where the resident was, but her colleagues alleged that she was actually aware of the resident's location. *Id*. Balding, however, is not employed in the same position as Griffin. Furthermore, Balding falsified information of a different type, as she misstated her knowledge about a resident's whereabouts while Griffin allegedly falsified medication information on a resident's chart,

13

which at this point seems to present a fundamentally different danger to a patient. Thus, Balding is not similarly situated.

Unlike Davis and Balding, Larry Elliott, the third comparator provided by Griffin, was similarly situated to Griffin. Elliott, an LPN like Griffin, committed several violations; but most importantly, he initially omitted a resident's medications, failed to notify a doctor about the omission, and then administered the medications late. Ex. E, pltf.'s resp. His alleged conduct is substantially similar to Griffin's, because they held similar positions and they both falsified medication records, thus putting patients at risk. Although he was given six disciplinary points and suspended for three days, he was not terminated. Taking the facts in a light most favorable to Griffin, because Elliott was similarly situated to Griffin but punished differently, Griffin's prima facie showing is sufficient.

The burden then shifts to defendants to offer a legitimate non-discriminatory reason for firing Griffin. Defendants have met this burden by stating that Griffin was fired for her violations of the agency's Minimum Conduct Standards. Defendants allege that she falsified the administration of a resident's medication and did not document an administration of medication.

Even though the presumption that AHC discriminated against Griffin drops from the case, Griffin can still survive summary judgment by demonstrating that "the legitimate reasons offered by [AHC] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quotation omitted).

At this final stage of the analysis, Griffin's burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  To evaluate Griffin's showing of pretext, "evidence used to support the prima facie case is considered along with the other evidence before the court to determine whether there exists a triable fact on the ultimate issue of [discrimination]." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006).

Griffin has met this pretext burden by not only drawing a comparison with Elliott, but by presenting additional evidence that raises triable facts on the issue of discrimination.  She makes several allegations in her deposition and in her statement of facts about whether AHC's proffered reason for terminating her was their actual reason.  In her deposition, she claims she observed Webb and other nurses "writing late entries" for medications administered to patients.  Ex. A, pltf.'s resp.  Indeed, the Eighth Circuit has found that an employee's showing that their employer "failed to follow its own policies" would be a sufficient showing of pretext.  *Ledbetter v. Alltel Corporate Servs., Inc.*, 437 F.3d 717 (8th Cir. 2006).  She also observed day shift nurses failing to sign resident accountability sheets, but Brunt allowed them to sign after another supervisor did not.  Stmt. of facts*,* ¶ 35-38.  In the court's view, these allegations raise a question as to whether procedural deviations and oversights in the AHC workplace were tolerated for most employees, but not for others like Griffin. This open question makes summary judgment on Griffin's remaining discrimination claims inappropriate at this time.

### 3. Retaliation claims under Title VII and § 1983

Griffin claims that defendants have violated Title VII, § 1983, and the ACRA by issuing a negative reference in retaliation for her EEOC charge. To establish a retaliation claim, Griffin must show "(1) that he engaged in statutorily protected activity; (2) an adverse employment action was taken against [her]; and (3) a causal connection exists between the two events." *NGrime v. Papillion Manor, Inc.* 2009 WL 382757, 7 (D.Neb, 2009) (citing *Gilooly v. Mo. Dep't of Health & Senior Servs.,* 421 F.3d 734, 739 (8th Cir.2005)). Griffin admits, however, that all employment reference requests "go through the Human Resources Department and the only information supplied is the employee's date of hire and job title." Pltf.'s response, ¶ 96. Assuming that a negative reference constitutes an adverse employment action, the facts in the record currently indicate that Griffin cannot prove that an adverse employment decision was taken against her. Because she cannot satisfy her prima facie burden for her retaliation claims under Title VII and § 1983, it is dismissed.

### B.   FMLA

Griffin alleges that all of the defendants violated the FMLA by failing to give her notice of her rights under the FMLA, interfering with her exercise of her FMLA leave rights, discharging her in retaliation for exercising her FMLA rights, and giving her a negative reference in retaliation. In the Eighth Circuit, there are two basic types of claims under the FMLA, interference and retaliation. *Phillips v. Matthews*, 547 F.3d 905, 909 (8th Cir. 2008) (citing *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C.A.

§ 2615(a)(1, 2))).

### 1. Interference

Griffin specifically claims that defendants interfered with her FMLA rights by denying her rights under the FMLA statutes and regulations, discouraging her from taking FMLA leave, not reinstating her to the same shift upon her return from leave, and terminating her in retaliation for taking leave.  To prove interference, Griffin must show that defendants denied her benefits to which she was entitled under the FMLA.  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (*citing Russell v. Broward Hosp.,* 346 F.3d 1335, 1340 (11th Cir. 2003)).  "Interference includes . . . discouraging an employee from using [FMLA] leave." *Id.*

Genuine issues of fact remain about whether the defendants deprived Griffin of her FMLA rights.  FMLA regulations clearly establish Griffin had a right not to be discouraged from taking FMLA leave (29 C.F.R. § 825.220(b)), a right not to suffer adverse action or termination for taking that leave (29 C.F.R. § 825.220(a)(1)), and the right to be reinstated to the same shift "or the same or an equivalent work schedule" (29 CFR § 825.220(d)).  As discussed above, the parties set forth different explanations as to why Griffin was fired. Griffin alleges in her deposition that her supervisors called her multiple times during her leave and that the calls made her "feel threatened I was going to get fired." Ex. A, p. 34, pltf.'s resp.  Thus, questions of fact remain as to whether defendants discouraged Griffin from taking leave that she was entitled to under the FMLA.  Similarly, issues of fact remain

as to whether the defendants gave Griffin a choice of shifts upon her return or whether they coerced her into a different work schedule.  At this point, the defendants have failed to prove conclusively that Griffin did not suffer an adverse action through a shift change.

Defendants cite a recent Eighth Circuit case that states that an employer "who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (citing *Smith v. Diffee Ford-Lincoln Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002); *see also Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008).  *Throneberry*, and the Tenth Circuit *Smith* decision it relies on, however, are inapposite.  In *Throneberry*, an employee was terminated during their FMLA leave, and the Eighth Circuit held that some terminations would not subject employers to liability, such as terminating an employee on FMLA leave for harassing a supervisor or co-worker, or letting go of an employee on FMLA because the employer goes out of business.  403 F.3d at 980.  Here, Griffin returned to work and was terminated two weeks later.

Further, the defendants have not proven that Griffin would have been terminated irrespective of whether she took FMLA leave, as evidenced by Elliott's different punishment for similar violations.  The record indicates that the defendants do not uniformly terminate all employees who falsify a record.  Whether Griffin would have been terminated regardless of whether she received FMLA leave is a fact question that is left for the jury to determine.

Summary judgment is therefore denied on this claim.

## 2. Retaliation

Griffin claims that the defendants terminated her and gave her a subsequent negative reference in retaliation for her taking FMLA leave.  Griffin can prove FMLA retaliation circumstantially by using a variant of the *McDonnell Douglas* burden-shifting test. *Hite v. Vermeer Manufacturing Co.*, 446 F.3d 858, 865 (8th Cir. 2006); *see McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005).  To establish a prima facie case of retaliation, Griffin must show: (1) she exercised rights afforded by the act; (2) she suffered an adverse employment action; and (3) there was a causal connection between her exercise of rights and the adverse employment action. *Hite*, 446 F.3d at 865.  Once Griffin establishes her prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their decision to terminate Griffin.  *Id.*  Then, the burden shifts back to Griffin to demonstrate that the employer's reason is pretextual.  *Id.*

Griffin succeeds in making a prima facie case of FMLA retaliation.  The parties agree that Griffin took FMLA leave and that she was terminated.  Defendants argue, however, that Griffin cannot establish a causal connection between the exercise of her FMLA rights and her termination.  Our circuit allows a plaintiff to establish causation by merely raising "an inference of a retaliatory motive."  *Id.* at 866 (quoting *Kipp v. Missouri Highway and Transp. Com'n.,* 280 F.3d 893, 897 (8th Cir. 2002)).  The timing of the leave and the adverse employment action can be used to establish this link without any additional evidence, but it

must be "very close." *Id.* (quoting *Eliserio v. United Steelworkers of Am.*, 398 F.3d 1071, 1079 (8th Cir. 2005); *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005)). The court in *Hite* also warned, however, that the "mere coincidence of timing . . . is rarely sufficient to establish the causative element." *Id.* At 866. Even if the court finds that the two events are not close enough in time, Griffin can "shorten the gap" by showing that shortly after she took her leave, the defendants took "escalating adverse and retaliatory action against her." *Id.* (quoting *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 503 (8th Cir. 2005)).

Griffin came back to work on February 25, 2007. She was terminated about two weeks later, on March 12, 2007. The Eighth Circuit has found that such a two-week interval is "close enough to establish causation in a prima facie case." *Peterson v. Scott County,* 406 F.3d 515, 525 (8th Cir. 2005); *see also Wallace v. DTG Operations, Inc.*, 442 F.3d 1119-20 (8th Cir. 2006) (citing *Peterson* to support finding that fifteen day interval created "strong support" for an inference of retaliatory intent); *Hite*, 446 F.3d at 866 (holding two months, with additional evidence, sufficient to establish causal link); *but see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases in which a three-month and a four-month period were insufficient to establish causal link); *Kipp*, 280 F.3d at 897 (holding two months "so dilutes" an inference of causation that the court was "constrained as a matter of law" to hold that the temporal connection was not satisfied). The two week interval between Griffin's protected conduct and her termination is thus sufficient to establish a causal link between her protected FMLA leave and her termination. Griffin has made her prima facie

case.

The burden now shifts back to defendants, who must offer a legitimate, nondiscriminatory reason for their decision to terminate Griffin.  As discussed above, defendants' offered reason for Griffin's termination is legitimate.  The burden then shifts back to Griffin to demonstrate that the employer's reason is pretextual.  Griffin can do this in a number of ways, including showing that the defendants "routinely treated similarly situated employees who were not in the protected class more leniently" or by presenting "strong evidence of a prima facie case."  *Hite*, 446 F.3d at 867 (citing *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 834-5 (8th Cir. 2002).  Griffin has satisfied her burden at the pretext stage with her evidence concerning Larry Elliott.  The comparison shows that the defendants treated another employee that did not request FMLA leave more leniently for a violation highly similar to Griffin's.  Defendants' motion for summary judgment on Griffin's retaliation claims is thus denied.

## IV.  CONCLUSIONS

Accordingly, defendant's motion for summary judgment (Docket No. 21) is granted in part and denied in part. Summary judgment is granted as to the following claims, and they are hereby dismissed with prejudice: (1) the Title VII claims against defendant Jimmie Webb in her individual capacity; (2) the Title VII claims against defendant John Selig in his official capacity; (3) the 42 U.S.C. § 1983 claims against the Arkansas Department of Human Services; (4) the 42 U.S.C. § 1983 claims against the Arkansas Health Center; and (5) the

Arkansas Civil Rights Act claims against Jimmie Webb.  Defendants' motion for summary

judgment is denied as to the following claims, which are the issues that will be tried: (1) the

Title VII claims against the Arkansas Department of Human Services; (2) the Title VII

claims against the Arkansas Health Center; (3) the 42 U.S.C. § 1983 claims against Jimmie

Webb in her individual capacity; (4) the 42 U.S.C. § 1983 claims against John Selig in his

official capacity; and (5) the Family and Medical Leave Act interference and retaliation

claims.

 IT IS SO ORDERED this 3rd day of September, 2009.


      _____
      UNITED STATES DISTRICT JUDGE